IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RANGE RESOURCES - APPALACHIA, LLC, | ) ) ) |
| Plaintiff, | ) ) ) Civil Action No. 09-355 |
| vs. | ) ) |
| BLAINE TOWNSHIP, Defendant. | ) ) ) ) |

AMBROSE, District Judge

**OPINION AND
ORDER OF THE COURT**

**Synopsis**

Plaintiff Range Resources - Appalachia, LLC ("Range") commenced this action seeking injunctive and declaratory relief, as well as damages, against Defendant Blaine Township (the "Township") on the grounds that certain ordinances and a resolution passed by the Township purporting to strip Range of its constitutional rights and assessing fees against Range for its activities within the Township are unconstitutional. By opinion and order, dated June 23, 2009 [Docket No. 17], I denied the Township's motion to dismiss the complaint. Plaintiff has now moved for judgment on the pleadings, arguing that the ordinances are preempted by state law, constitute an impermissible exercise of police power, and violate the Supremacy Clause. Plaintiff further argues that the resolution is unconstitutionally vague and represents an improper tax. For the reasons set forth below, I grant Plaintiff's motion for judgment on the pleadings.

1

## I. Applicable Standards

Federal Rule of Civil Procedure 12© states: "Motion for Judgment on the Pleadings. After the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings." (West 2008). "Judgment will not be granted unless the movant clearly establishes there are not material issues of fact, and he is entitled to judgment as a matter of law." Milgrub v. Continental Cas. Co., 2007 WL 625039, at *3 (W.D. Pa. Feb. 22, 2007) (quoting Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005)). "The Court must view the facts presented in the pleadings and the inferences drawn therefrom in the light most favorable to the nonmoving party." Id.

## II. Factual Allegations[1]

### A. The Plaintiff

Plaintiff Range is a Delaware limited liability company, registered to do business within the Commonwealth of Pennsylvania, and with a place of business at 380 Southpoint Boulevard, Canonsburg, Pennsylvania. (Complaint [Docket No. 1], at ¶ 1.) Range is the owner of oil and natural gas leasehold interests located in the Township, and has a legal property interest in over 2,500 acres of property within the Township. (Id. at ¶ 6.) Range has applied for and been granted permits from the Pennsylvania Department of Environmental Protection to develop Range's natural gas leases within the Township. (Id. at ¶ 7.)

Specifically, Range is planning to develop the Marcellus Shale region, which is a shale strata located at vertical depths from 6,000 to 7,000 feet. (Id. at ¶ 51.) Development of the

---

[1]Plaintiff's factual allegations were set forth in detail in my prior opinion denying the Township's motion to dismiss, but I will reiterate them in relevant part for the sake of clarity herein.

2

Marcellus Shale region is accomplished through the drilling of "deep wells," at an approximate

cost of four million dollars. (Id. at ¶ 52.) The drilling will take approximately thirty days and

will involve anywhere from twenty to thirty subcontractors. (Id. at ¶ 53.)

## B. The Township Ordinances

The Township is a second class township located in Washington County, Pennsylvania.

(Id. at ¶ 3.) On July 21, 2008, the Township adopted Ordinance O-007-2008 (the "Corporate

Rights Ordinance") bearing the title "An Ordinance by the Second Class Township of Blaine

Township, Washington County, Pennsylvania, Eliminating Legal Powers and Privileges from

Corporations Doing Business Within Blaine Township to Vindicate the Right to Democratic

Self-Governance." (Id. at ¶ 26.) A copy of the Corporate Rights Ordinance is annexed to the

Complaint as Exhibit 4.

The Corporate Rights Ordinance provides, in relevant part:

**Section 3.** Findings and General Purpose. The Blaine Township Board of
Supervisors recognizes that:

(1) A corporation is a legal fiction created and operated by the express permission
of the people of Blaine Township as citizens of the Commonwealth of
Pennsylvania;

(2) Interpretation of the U.S. Constitution by unelected Supreme Court justices to
include corporations in the term "persons" has long denied the peoples' exercise
of rights by endowing corporations with constitutional privileges intended solely
to protect the citizens of the United States or natural persons within its borders.
Enforcement of those corporate "rights" by courts and governments has long
wrought havoc on the peoples' democratic process;

(3) Interpretation of the U.S. Constitution by Supreme Court justices to afford
corporations the protections of the Commerce Clause (Article I, § 8 of the
Constitution of the United States) and the Contracts Clause (Article I, § 10 of the
Constitution of the United States) has prevented communities and governments
from securing the health, safety, welfare, and rights of citizens and natural

3

persons; . . . .

**Section 4**.  Specific Purpose.  The specific purpose of this Ordinance is to guarantee to the residents of Blaine Township their right to a republican form of governance by refusing to recognize the purported constitutional rights of corporations.  By doing so, the Board of Supervisors seeks to remedy current and future harms that corporations have caused - and will continue to cause - to the people of Blaine Township by the exercise of such "rights."

**Section 6**.  Statement of Law.  Within Blaine Township, corporations shall not be "persons" under the United States or Pennsylvania Constitutions, or under the laws of the United States, Pennsylvania, or Blaine Township, and so shall not have the rights of persons under those constitutions and laws.  In addition, within the Township of Blaine, no corporation shall be afforded the privileges, powers, and protections of the Contracts Clause or Commerce Clause of the United States Constitution, or of similar provisions from the Pennsylvania Constitution.

**Section 7**.  People's Right to Self-Governance and Right of Separation.  The foundation for the making and adoption of this law is the people's fundamental and inalienable right to govern themselves, and thereby secure our rights to life, liberty, property, and pursuit of happiness.  Any attempts to use county, state, or federal levels of government - judicial, legislative, or executive - to preempt, amend, alter, or overturn this Ordinance or parts of this Ordinance, or to intimidate the people of Blaine Township or their elected officials, shall require the Board of Supervisors of Blaine Township to hold public meetings that explore the adoption of other measures that expand local control and the ability of residents to protect their fundamental and inalienable right to self-government. Such consideration may include actions to separate the municipality from the other levels of government used to preempt, amend, alter, or overturn the provisions of this Ordinance or other levels of government used to intimidate the people of Blaine Township or their elected officials.

On April 21, 2008, the Township passed Ordinance O-002-2008, entitled "Blaine

Township Corporate Disclosure and Environmental Protection Ordinance" (the "Disclosure

Ordinance").  A copy of the Disclosure Ordinance is annexed to the Complaint as Exhibit 1.  The

Disclosure Ordinance requires corporations doing business in the Township to submit an

extensive disclosure form to the Township either prior to commencing business, or if already

doing business within the Township, within sixty (60) days of adoption of the Disclosure

4

Ordinance. (Docket No. 1, Ex. 1, at § 5.) The disclosure obligations include, but are not limited to:

- "details that describe the nature and extent of the business pursued, or to be pursued. . .with such particularity to enable the Supervisors and residents of Blaine Township to understand the effect and impact of the business";

- "a statement detailing which State Routes and Township roads will be used for that business and the impact upon those roads";

- a statement of "the anticipated hours of operation for the location and for the use of roads within the Township";

- a statement as to "whether or not subcontractors are being used at the location and shall identify those subcontractors"; and

- a copy of the articles of incorporation and bylaws of the corporation.

(Docket No. 1, at ¶ 16.) All subcontractors must also file their own disclosure statement. (Id. at ¶ 17.)

In addition to these disclosures, the Disclosure Ordinance prohibits a corporation from doing business in the Township if it "has a history of consistent violations of the law." (Id. at ¶ 18.) The corporation is also barred from doing business if any of its officers, directors or principal owners are also directors, officers or owners of any other corporation which has a history of consistent violations of the law. (Id.) "History of consistent violations of the law" is defined as "[t]hree or more violations committed over the prior twenty year period." (Id. at ¶ 22.) "Violation" is broadly defined to include "notices of violation issued by the Department of Environmental Protection or any other Pennsylvania state agency, or any other state or federal regulatory agency; criminal convictions against the corporation brought by state, federal, or local governments and agencies; and imposition of fines and penalties by any agency of local, state or

5

federal government." (Id.) The term also includes all violations discovered by County

Conservation District personnel, or personnel employed or appointed by any local government,

consent orders, consent agreements, settlement agreements, and issuance of notices of violation,

regardless of any remedy or action taken to resolve the notice. (Id.)

If the Township has "reason to believe" that a corporation or any of its officers, directors

or principal owners has such a history of consistent violations, then the corporation will be

required to submit a compliance history detailing any violations over the prior twenty years, as

well as a compliance history for corporations affiliated with the officers, directors or principal

owners. (Id. at ¶ 23.) Any corporation that violates or is convicted of violating the Disclosure

Ordinance two or more times shall be permanently prohibited from doing business in the

Township, along with the corporation's parent, sister, successors, subsidiaries, alter egos, and all

other corporations substantially owned or controlled by that corporation. (Id. at ¶¶ 26-29.) The

Disclosure Ordinance concludes with the provision that

> [a]ny attempt to use county, state or federal levels of government - judicial,
> legislative, or executive - to preempt, amend, alter or overturn this Ordinance or
> parts of this Ordinance, or to intimidate the people of Blaine Township or their
> elected officials, shall require the Board of Supervisors of Blaine Township to
> hold public meetings that explore the adoption of other measures that expand
> local control and the ability of residents to protect their fundamental and
> inalienable right to self-government. Such considerations may include actions to
> separate the municipality from the other levels of government used to preempt,
> amend, alter or overturn the provisions of this Ordinance or other levels of
> government used to intimidate the people of Blaine Township or their elected
> officials.

(Id. at ¶30) (Emphasis omitted).

### C. Temporary Structure Fee Resolution

On March 17, 2008, the Township passed Resolution R-001-2008, entitled "A Resolution

6

of the Blaine Township Board of Supervisors to Enact a $300.00 Permit Fee for Each Temporary

Structure, Storage or Office Trailer Used at All Work Sites," (the "Temporary Structure Fee

Resolution" or the "TSFR"). (Docket No. 1, at ¶¶ 36-37.) A copy of the Temporary Structure

Fee Resolution is annexed to the Complaint as Exhibit 3. The TSFR states that "[t]emporary

structures and trailers used in conjunction with construction work may be permitted only during

the period that the construction work is in progress." (Docket No. 1, at ¶ 38.) It requires that

"[e]ach structure shall have its own permit" and that "[n]o permit shall be valid over six

months." (Id. at ¶ 39.) The fee for each permit is $300.00. (Id. at ¶ 40.) The TSFR does not

define the words "temporary," "structure," "trailer," or "construction work." (Id. at ¶ 41.)

### D. Enforcement History

On June 17, 2008 and June 27, 2008, the Township issued twenty-two (22) citations to

Range for violations of the TSFR, alleging that Range had twenty-two "temporary structures"

located on its three-acre drilling site. (Id. at ¶ 60.) A copy of the citations is annexed to the

Complaint as Exhibit 5. Of the twenty-two structures, eighteen consisted of water tanks. (Id. at ¶

61.) According to the Township, Range was required to pay a $300 fee for each of the

"structures," totaling $6,600.00. (Id. at ¶ 62.)

According to Range's brief in opposition to this motion, Range was found guilty of the

violations under the Temporary Structure Fee Resolution by District Magistrate Jay H. Dutton on

October 8, 2008. Range appealed the order to the Washington County Court of Common Pleas.

At the hearing before Judge Paul Pozonsky, Range argued that the Township had improperly

issued the criminal citations in violation of the procedure required by the Pennsylvania

Municipalities Planning Code, 53 P.S. § 10616.1. By order dated March 24, 2009, Judge

7

Pozonsky found Range not guilty of all violations under the TSFR on the grounds that the Township has not "followed the statutory requirements regarding the enforcement of the alleged zoning violations." (Pl. Opp. Br. at 7.)

On August 1, 2008, the Township issued two citations to Range for alleged violations of the Disclosure Ordinance. (Docket No. 1, at ¶ 63.) A copy of the citations is annexed to the Complaint as Exhibit 6. The citations seek payment of $1,400.00 for an alleged failure to comply with the Disclosure Ordinance with respect to two different drilling sites within the Township. (Id. at ¶¶ 64-65.) According to Plaintiff's brief, Range was found guilty of these violations on October 8, 2008 by District Magistrate Dutton. By order dated February 26, 2009, the Washington County Court of Common Pleas issued a general continuance of Range's appeal pending the outcome of this litigation. (Pl. Opp. Br. at 7, n.2.)

Plaintiff asserts in eleven separate claims that: the Corporate Rights Ordinance violates the Equal Protection Clause of the U.S. Constitution, substantive due process and constitutes an impermissible exercise of police power; the Disclosure Ordinance violates the Equal Protection Clause, the Commerce Clause, constitutes an improper tax and an impermissible exercise of police power, and is preempted by state law; and the Temporary Structure Fee Resolution is unconstitutionally vague and overbroad and constitutes an improper tax. Plaintiff seeks declaratory relief on all counts.

### III. Plaintiff's Motion For Judgment On The Pleadings

Plaintiff has moved for judgment on the pleadings on a number of different grounds. With respect to the Corporate Rights Ordinance, Plaintiff argues that it violates the Supremacy Clause of the United States Constitution. With respect to the Disclosure Ordinance, Plaintiff

8

argues that it is preempted by Pennsylvania's Limited Liability Company Law ("LLCL") and the Pennsylvania Oil and Gas Act, 58 P.S. § 601.101 *et seq.*, and is an impermissible exercise of the Township's limited legislative authority. Finally, Plaintiff argues that the Temporary Structure Fee Resolution is invalid as unconstitutionally vague and an improper tax.

I have previously addressed several of these arguments, and the Township's opposition thereto, in my opinion on the motion to dismiss [Docket No. 17] and in my opinion granting judgment on the pleadings in Penn Ridge Coal, LLC v. Blaine Township, No. 08-1452, 2009 U.S. Dist. LEXIS 84428, at *1 (W.D. Pa. Sept. 16, 2009). In the interest of judicial economy, I will not repeat myself in detail herein, and will refer those prior opinions.

### A. Corporate Rights Ordinance

This action involves the same Defendant (the Township) and the legal viability of the same Corporate Rights Ordinance as addressed by me in Penn Ridge. The arguments proffered by the parties herein are likewise identical to those previously before me. In Penn Ridge, I held that "the Corporate Rights Ordinance is invalid and unenforceable under the Supremacy Clause of the United States Constitution, and [] Supreme Court precedent. . . ." 2009 U.S. Dist. LEXIS 84428, at *17. The Township has provided no basis to distinguish the facts herein from my prior holding. Accordingly, I adopt my reasoning and holding in Penn Ridge as dispositive herein.

### B. Disclosure Ordinance

#### 1. Preemption By the Pennsylvania LLCL

Plaintiff argues that the Disclosure Ordinance is invalid because it is preempted by both Pennsylvania's Limited Liability Company Law, 15 Pa.C.S.A. § 8901 *et seq.* ("LLCL") and the Pennsylvania Oil and Gas Act, 58 P.S. § 601.101 *et seq.* (the "Oil and Gas Act"). Defendant

9

replies that the LLCL addresses only creation and internal corporate governance, and expressly does not preempt other laws regulating corporate activities. (Def. Br. at 8-9.) Defendant further argues that the Disclosure Ordinance does not regulate oil and gas well operations, and thus cannot be preempted by the Oil and Gas Act. (Id. at 16.)

I previously addressed whether the Disclosure Ordinance is preempted by the LLCL in my prior opinion in Penn Ridge. I held that the Plaintiffs therein had not met their burden of establishing that the LLCL preempted the Disclosure Ordinance. See Penn Ridge, 2009 U.S. Dist. LEXIS 84428, at *21. My reasoning applies equally here. Section 8911 of the LLCL provides that an LLC may be organized "for any lawful purpose." 15 Pa.C.S.A. § 8911(a). Plaintiff has not cited any authority interpreting this language to mean that a Pennsylvania limited liability company may conduct any legitimate business anywhere in the state without regulation. Nor has Plaintiff provided any support for its assertion that the reference in section 8911 to the ability of the "Commonwealth to enjoin the company from the doing of unauthorized or unlawful business" was intended to vest exclusive jurisdiction in the Commonwealth, and I do not read the statute thus. The remainder of the LLCL addresses the internal organization, governance and dissolution of LLCs. (See §§8901-8993.) None of these provisions of the LLC conflict with or in any manner address the disclosure requirements set forth in the Disclosure Ordinance. Accordingly, applying the five-prong preemption test set forth in Liverpool Twp. V. Stephens, 900 A.2d 1030, 1033 (Pa. Cmmwlth. 2006), and discussed at length in Penn Ridge, I again hold that the Disclosure Ordinance is not preempted by the LLCL.

### 2. Preemption By the Oil and Gas Act

The Oil and Gas Act defines as its purposes, *inter alia*, to "[p]ermit the optimal

10

development of the oil and gas resources of Pennsylvania consistent with the protection of the

health, safety, environment and property of the citizens of the Commonwealth" and to "[p]rotect

the safety and property rights of persons residing in areas where such exploration, development,

storage or production occurs." 58 P.S. § 601.102(1) and (3).  A person wishing to drill or alter an

existing well must first obtain a permit from the state, pay a permit fee, and submit detailed

information regarding the proposed well to the state, the landowner, and nearby landowners.  Id.

at § 601.201.  The state may deny a permit if "the applicant, with respect to any other well or

wells which the applicant operates, is in continuing violation of this act or any other applicable

statute administered by the department." Id. at §601.201(e).

The Oil and Gas Act also contains an express preemption clause:

> Except with respect to ordinances adopted pursuant to [the Pennsylvania
> Municipalities Planning Code or the Flood Plain Management Act], all local
> ordinances and enactments purporting to regulate oil and gas well operations
> regulated by this act are hereby superseded.  No ordinances or enactments adopted
> pursuant to the aforementioned acts shall contain provisions which impose
> conditions, requirements or limitations on the same features of oil and gas well
> operations regulated by this act or that accomplish the same purposes as set forth
> in this act.  The Commonwealth, by this enactment, hereby preempts and
> supersedes the regulation of oil and gas wells as herein defined.

Id. at § 601.602.

The Pennsylvania Supreme Court has addressed the preemptive effect of the Oil and Gas

Act in two recent opinions.  In Huntley & Huntley, Inc. v. Borough of Oakmont, 964 A.2d 855

(Pa. 2009), the defendant borough denied the plaintiff a conditional use permit to drill and

operate a gas well on residential property.  The plaintiff argued that borough was preempted by

the Oil and Gas Act from restricting the location of the drilling operation.

Since the case involved zoning, the Supreme Court examined the more limited

11

preemption language of the Oil and Gas Act which prohibits ordinances "which impose conditions, requirements or limitations on the same features of oil and gas well operations regulated by this act or that accomplish the same purposes as set forth in this act." The court concluded that "Section 602's reference to 'features of oil and gas well operations regulated by this act' pertains to technical aspects of well functioning and matters ancillary thereto (such as registration, bonding, and well site restoration), rather than the well's location." 964 A.2d at 864. The court further explained:

> This limitation on preemption regarding MPC-enabled legislation appears to reflect the General Assembly's recognition. . .that, while effective oil and gas regulation in service of the Act's goals may require the knowledge and expertise of the appropriate state agency, the MCP's authorization of local zoning laws is provided in recognition of the unique expertise of the municipal governing bodies to designate where different uses should be permitted in a manner that accounts for the community's development objectives, its character, and the suitabilities and special nature of particular parts of the community.

Id. at 866. The court held, therefore, that "the Ordinance serves different purposes from those enumerated in the Oil and Gas Act, and hence, that its overall restriction on oil and gas wells in R-1 districts is not preempted by that enactment." Id. The court noted, however, that "[w]e do not, for instance, suggest that the municipality could permit drilling in a particular district but then make that permission subject to conditions addressed to features of well operations regulated by the Act." Id. at 866 n.11.

In Range Resources - Appalachia, LLC v. Salem Township, 964 A.2d 869 (Pa. 2009),[2] the defendant township enacted an ordinance, later subsumed into its planning code, that expressly created additional regulation of oil and gas wells. For instance, the ordinance

---

[2]Despite being a party to this case, Plaintiff did not bring this opinion to my attention.

established permitting procedures specifically for oil and gas wells, imposed bonding

requirements prior to drilling, regulated well heads and required site restoration after drilling

operations ceased. 964 A.2d at 875.  In some instances, the ordinance's regulations were more

stringent than those of the Oil and Gas Act.  Particularly, the court noted that the ordinance's

permitting and penalty provisions, were "phrased in such general terms. . .as to provide the

Township with virtually unbridled discretion to deny permission to drill."  Id. at 876.  The

Supreme Court held that the ordinance was preeempted by the Oil and Gas Act:

> In sum, not only does the Ordinance purport to police many of the same aspects of
> oil and gas extraction activities that are addressed by the Act, but the
> comprehensive and restrictive nature of its regulatory scheme represents an
> obstacle to the legislative purposes underlying the Act, thus implicating principles
> of conflict preemption.  Furthermore, its stated purposes overlap substantially
> with the goals as set forth in the Oil and Gas Act, thus implicating the second
> statutory basis for express preemption of MPC-enabled local ordinances.  In view
> of the Ordinance's focus solely on regulating oil and gas drilling operations,
> together with the broad preemptive scope of Section 602 of the Act with regard to
> such directed local regulations, we agree with the common pleas court's
> conclusion that each of the oil and gas regulations challenged in Appellee's
> complaint is preempted by the Oil and Gas Act and its associated administrative
> regulations.

Id. at 877.

While neither of these cases is directly on point, they both bear on Plaintiff's preemption

argument herein.  As the Township argues, the Disclosure Ordinance does not "purport" to

regulate the oil and gas industry, and thus facially does not fall with the express preemption of

Section 602 of the Oil and Gas Act.  Nor is the Disclosure Ordinance a zoning ordinance, and

thus it does not fall within the Section 602's preemption of MPC-enabled local ordinances.

However, my analysis does not end there.  As previously discussed in part III(B) above,

Pennsylvania applies a five-part test to determine preemption.  Applying those factors here, as

13

well as the analysis of the Pennsylvania Supreme Court discussed above, I find that the Disclosure Ordinance is preempted by the Oil and Gas Act.

First, and most significantly, the Disclosure Ordinance forbids what the Oil and Gas Act permits. Under the Disclosure Ordinance, the Township may prevent Plaintiff from drilling for natural gas if Plaintiff or any its affiliates has three or more violations of any law, no matter how unrelated to its proposed operations in the Township. The Oil and Gas Act has a significantly less stringent permitting standard. An applicant may obtain a permit as long as it is not in continuing violation of the Oil and Gas Act or other act of the department with respect to any other wells it operates. Thus, an applicant may obtain a permit from the Department of Environmental Resources, yet not be permitted to drill pursuant to the Disclosure Ordinance. As the Supreme Court explained in Range Resources, this "almost unbridled discretion to deny permission to drill" is in conflict with the Oil and Gas Act's more permissive approach. See 964 A.2d at 876.

Further, it is clear from the language of Section 602 of the Oil and Gas Act that it was expressly intended to be the exclusive regulator of oil and gas well development. See Huntley, 964 A.2d at 863 ("Section 602 of the Oil and Gas Act contains express preemption language. That language totally preempts local regulation of oil and gas development except with regard to municipal ordinances adopted pursuant to the MPC as well as the Flood Plain Management Act.") Uniformity is required to fulfill the Oil and Gas Act's stated purpose of permitting "the optimal development of the oil and gas resources of Pennsylvania. . . " 58 P.S. § 601.102(1). I recognize the comprehensiveness of the Oil and Gas Act. Finally, given the Township's history of using the Disclosure Ordinance to disallow mining companies, and now natural gas

14

companies, which have obtained state permits from operating with the Township, I do not doubt that the Disclosure Ordinance stands as an obstacle to the accomplishment and execution of the full purposes and objectives of the Pennsylvania State Legislature as codified in the Oil and Gas Act.

Accordingly, because the Disclosure Ordinance, as applied to Plaintiff's operations, conflict with the provisions of the Oil and Gas Act, I hold that the Disclosure Ordinance is preempted by state law, and may not be applied to interfere with Plaintiff's operations in the Township.

### 3. Impermissible Exercise of Legislative Authority

Plaintiff argues that the Disclosure Ordinance is an impermissible exercise of the Township's limited legislative power. (Pl. Br. at 11.)  In my opinion in Penn Ridge, I addressed this exact argument in connection with the very same ordinance, and held that sections six through twelve and fourteen through sixteen of the Disclosure Ordinance exceed the legislative power of the Township under the Code, and are therefore void. 2009 U.S. Dist LEXIS 84428, at *25. In the interest of judicial economy, I adopt herein my reasoning and holding in Penn Ridge with respect to this issue.

### C. Temporary Structure Fee Resolution

Plaintiff argues that the Temporary Structure Fee Resolution is unconstitutionally vague, and therefore, void.  (Pl. Br. at 16-18.)  Specifically, Plaintiff claims that the TSFR fails to define certain key terms, such as "temporary," "structure," "trailer" and "construction work," such that "individuals of common intelligence must guess when the [TSFR] applies," and will permit arbitrary and inconsistent application of the TSFR by Township officials. (Id. at 18.)

15

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." Jeffrey v. O'Donnell, 702 F. Supp. 516, 519 (M.D. Pa. 1988) (quoting Grayned v. City of Rockford, 408 U.S. 104, 108 (1972)). "Similarly, a statute may neither forbid nor require the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application." Id. "It is a fundamental rule that an ordinance must establish a standard to operate uniformly and govern its administration and enforcement in all cases, and that an ordinance is invalid where it leaves its interpretation, administration or enforcement to the unbridled or ungoverned discretion, caprice or arbitrary action of the municipal legislative body or of administrative bodies or officials. . . ." Orwell Twp. Supervisors v. Jewett, 571 A.2d 1100, 1103 (Pa. Commw. Ct.. 1990) (quoting Archbishop O'Hara's Appeal, 131 A.2d 587, 593 (Pa. 1957)).

I agree that the TSFR's failure to define the terms "temporary," "structure," "trailer," and "construction work" renders the ordinance unconstitutionally vague. In further support of this conclusion, I note that the Township argues that the terms' meaning is clear - "an entity engaged in construction work within the municipality which maintains non-permanent trailers on-site to support those construction activities must apply for a temporary permit to enable those trailers to remain on the work site." (Def. Br. at 19.) However, of the twenty-two structures on Plaintiff's work site that were cited by the Township as violations, eighteen of them consisted of water tanks, not trailers. (Complaint, at ¶ 61.) This enforcement of the TSFR by the Township in a manner inconsistent with the Township's own interpretation of the TSFR demonstrates the facially unconstitutional ambiguity of the TSFR. Cf. United States v. Maloney, 513 F.3d 350, 358 (3d Cir. 2008) ("The divergent attempts to interpret the term "questioned" during Maloney's

16

revocation hearing illustrate the ambiguous scope of this condition of supervised release.")

Accordingly, I hold that the TSFR is invalid.

> Plaintiff further argues that the fee is invalid as an improper tax. (Pl. Br. at 18-19.)

> "[A] license fee is a sum assessed for the granting of a privilege; the municipality granting the license usually incurs costs, and it is reasonable to require the person seeking the license to defray costs commensurate with the expense incurred. A tax, on the other hand, produces a high proportion of revenue in relation to the costs of supervision. If a license fee collects more than an amount commensurate with the expense of administering the license, it would become a tax revenue and cease to be a valid license fee."

Martin Media v. Hempfield Twp. Zoning Hearing Bd., 671 A.2d 1211, 1215 (Pa. Commw. Ct. 1996)(quotations omitted), appeal denied, 683 A.2d 887 (Pa. 1996); Talley v. Commonwealth, 553 A.2d 518, 519 (Pa. Commw. Ct. 1989)(same). "The burden is on the challenger to prove that the fee is unreasonable, and all doubt must be resolved in favor of its reasonableness, to give the municipality latitude in anticipating the expense of enforcing the ordinance." Martin Media, 671 A.2d at 1215; Talley, 553 A.2d at 520.

In Martin Media and Talley, the courts held the fees at issue unreasonable after assessing evidence of the township's and borough's costs of enforcement. On a motion for judgment on the pleadings, I may not consider outside evidence to assess the reasonableness of the fee in relation to the Township's expenses. In any event, Plaintiff has produced no such evidence. Accordingly, I find that Plaintiff's argument is premature at this stage of the litigation, and Plaintiff has not met its burden of establishing that the fee is unreasonable. [3]

---

[3]Plaintiff also argues that the fees charged in the Disclosure Ordinance constitute improper taxes. Because I have held that the Disclosure Ordinance is preempted by state law and an invalid exercise of the Township's municipal powers, I need not address this issue. However, for the same reasons that Plaintiff's argument with respect to the reasonableness of the TSFR is premature, I would deny Plaintiff's argument with respect to the Disclosure Ordinance.

## Conclusion

Based on the foregoing, Plaintiff's motion for judgment on the pleadings is granted.

## ORDER OF COURT

Having carefully considered Plaintiff's motion for judgment on the pleadings [Docket

Nos. 20, 21], Defendant's opposition thereto [Docket No. 22], and Plaintiff's reply [Docket No.

25], it is hereby ORDERED that Plaintiff's motion for judgment on the pleadings is GRANTED.

BY THE COURT:

Donetta W. Ambrose,
U.S. District Judge

18